**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILIP VALVARDI<br>118 Pennsylvania Avenue<br>Bryn Mawr, PA 19010<br><br>Plaintiff,<br><br>v.<br><br>COMPILER HOLDINGS, INC.<br>d/b/a GREENE STREET CANNABIS, CO.<br>7535 West 4th Avenue<br>Hialeah, FL 33014<br>and<br>ADAM WOLMAN<br>122 Orquidea Avenue<br>Coral Gables, FL 33143<br>and<br>ALEXA WOLMAN<br>122 Orquidea Avenue<br>Coral Gables, FL 33143<br>and<br>PHILIP WOLMAN<br>160 Casuarina Concourse<br>Coral Gables, FL 33143<br><br>Defendants. | CIVIL ACTION<br><br>No.:____________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Mr. Philip Valvardi ("Plaintiff," or "Mr. Valvardi,") by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Mr. Valvardi hereby complains as follows against the above-captioned Defendants and asserts violations of the Pennsylvania Wage Payment and Collection Law ("PA WPCL" - 43

P.S. § 260.1 et seq.), Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, et. seq.), and Pennsylvania common law.

2. Defendants have individually, and in their aggregate, knowingly and intentionally failed to pay earned wages owed to Mr. Valvardi in violation of Pennsylvania law.

3. As a direct consequence of Defendants' unlawful actions, Mr. Valvardi seeks damages as set forth herein.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

5. Plaintiff is a citizen of Pennsylvania. Defendant Compiler Holdings, Inc. is a Delaware corporation with its principal place of business in Florida, and the Individual Defendants are citizens of Florida.

6. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because the events giving rise to this lawsuit occurred here and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

**PARTIES**

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Mr. Valvardi is an adult individual, with an address as set forth in the caption.

10. Defendant Compiler Holdings, Inc. d/b/a Greene Street Cannabis Co. ("Defendant Compiler") is a privately held business corporation formed under the laws of the State of Delaware with a principal place of business as set forth in the caption. Defendant Compiler operates retail cannabis stores across multiple states.

11. Defendant Compiler's President and Founder Adam Wolman ("Adam Wolman"), Chief Executive Officer ("CEO") Alexa Wolman ("Alexa Wolman"), and Principal Investor Philip Wolman ("Philip Wolman") (collectively the "Individual Defendants") directed and controlled Mr. Valvardi's job duties and directed the payment (or non-payment) of Mr. Valvardi's wages.

12. As President and Founder, Adam Wolman exercised executive authority over Defendant Compiler's operations and participated in decisions concerning employee compensation and the payment of Mr. Valvardi's salary.

13. As CEO, Alexa Wolman likewise possessed and exercised executive decision-making authority concerning Defendant Compiler's operations, finances, and compensation obligations, including the outstanding compensation owed to Mr. Valvardi.

14. Philip Wolman exercised direct and substantial control over Defendants' financial operations and decisions concerning the payment of executive compensation, including that of Mr. Valvardi.

15. Adam Wolman, Alexa Wolman, and Philip Wolman each were personally aware that Mr. Valvardi continued performing CFO services while substantial portions of his salary

remained unpaid and nevertheless permitted and directed Mr. Valvardi to continue performing those services.

16. Adam Wolman, Alexa Wolman, and Philip Wolman each participated in discussions and/or decisions concerning the payment of Mr. Valvardi's compensation and possessed authority to affect whether and when such compensation would be paid.

17. Defendants also own and operate numerous subsidiaries and corporate entities which they use to conduct Defendants' business ventures including without limitation: Dream Greene, LLC, Green Street Holdings West Virginia LLC, Green Street Holdings New Mexico LLC, Green Street Holdings Maine LLC, Dream Greene Massachusetts LLC, Healing Greene Massachusetts LLC, Healing Greene New York, LLC, Azuroverde 2025 Trust, Healing Greene Florida, LLC, Sub-Trust C of the Waterstone Trust, Waterstone Trust, Stiltsville Investments, LLC, YK Botanicals LLC, Wolman Family Holdings LLC, and For Eyes Real Estate, LLC.

18. Due to overlapping resources, management, advertisement, controls, benefits, directives, and other (joint and integrated) management structures, Defendants are properly single, joint and/or integrated employers for all purposes in this lawsuit.

19. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

20. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21. On or about January 17, 2025, Defendants sent Mr. Valvardi an Offer Letter to serve as their Chief Financial Officer ("CFO") at an annual salary of $180,000 paid on a bi-weekly basis and remotely working from his domicile as set forth in the caption.

22. At the time Defendants extended the Offer Letter, Defendants knew that Mr. Valvardi resided in Pennsylvania and that he would perform his duties as CFO remotely from his residence in Bryn Mawr, Pennsylvania. Defendants hired Mr. Valvardi with the explicit understanding that Pennsylvania would be his regular and primary work location.

23. The terms of Mr. Valvardi's employment were set out in his Offer Letter which explicitly set out that it was an "Offer of Employment as Chief Financial Officer – Compiler Holdings, Inc." *See* Offer Letter attached hereto as Exhibit "A."

**Mr. Valvardi Begins Employment but is Misclassified by Defendants**

24. On or about February 10, 2025, Mr. Valvardi commenced his employment as Defendants' CFO and remains currently employed by Defendants despite not being paid his earned wages in excess of $191,000.

25. In his role as CFO, Mr. Valvardi reports directly to the Individual Defendants and is responsible for the financial management of Defendants' various corporate entities, financial planning, strategic planning, financial reporting, regular executive meetings, risk management and many related activities.

26. Despite labeling Mr. Valvardi a "1099 Independent Contractor," Defendants treated him as an employee and executive officer in practice.

27. Defendants determined Mr. Valvardi's position and responsibilities, assigned and directed his work, required him to report to Defendants' executive leadership, set expectations and deadlines for his work, and possessed the authority to add, remove, or modify his responsibilities.

28. Mr. Valvardi did not perform discrete projects for Defendants for separately negotiated fees. Instead, he continuously served as Defendants' CFO and was promised a fixed annual salary of $180,000, payable bi-weekly, without regard to Defendants' profitability or the number of individual assignments he completed.

29. Mr. Valvardi did not share in Defendants' profits or losses, did not make a capital investment in Defendants' business, and did not possess an independent opportunity for profit or risk of loss based upon the manner in which he performed his CFO duties.

30. Mr. Valvardi performed work integral to Defendants' ongoing business operations, including responsibility for Defendants' financial management, planning, reporting, budgeting, cash-flow analysis, and related financial functions.

31. Mr. Valvardi recognized this misclassification and made numerous complaints about both his and others' misclassification as contractors and Defendants' failure to contribute employer portions of FICA on their employees' behalf.

32. Mr. Valvardi continued to perform his role with competence and professionalism despite Defendants' abject failure to pay him his earned wages.

**Defendants Willfully Fail to Pay Mr. Valvardi's Wages**

33. Through the first seven months of his employment with Defendants, Mr. Valvardi was paid sporadically, and as of October 8, 2025, Defendants were already behind in paying him $42,752.54 in wages.

34. However, upon information and belief, Philip Wolman, as the principal investor of Defendant Compiler (and father of Adam Wolman), began to withhold critical funding, including funding for employee salaries such as Mr. Valvardi.

35. As discussed supra, Philip Wolman served as a principal source of funding for Defendants' operations and exercised substantial authority over whether and when additional funds would be provided to Defendant Compiler and its affiliated entities.

36. Philip Wolman was regularly informed concerning Defendants' financial condition and outstanding payroll obligations, including the compensation owed to Mr. Valvardi.

37. Philip Wolman participated in decisions concerning whether available funds would be provided and/or used to satisfy employee and executive compensation obligations, including Mr. Valvardi's unpaid salary.

38. Despite knowing that Mr. Valvardi had already earned substantial compensation that remained unpaid, Philip Wolman declined and/or delayed funding necessary to bring Mr. Valvardi's wages current and/or directed that available funds be used for other obligations.

39. Accordingly, Philip Wolman did not merely serve as a passive investor. He exercised actual decision-making authority concerning the availability and use of funds for payroll and participated in the decisions that resulted in Mr. Valvardi's earned wages remaining unpaid.

40. Although Defendants occasionally made partial payments toward Mr. Valvardi's compensation, those payments were insufficient to satisfy the wages then due and never brought Defendants current on their compensation obligations.

41. Mr. Valvardi nevertheless continued earning additional compensation during each successive pay period in which he performed CFO services for Defendants, causing the unpaid balance to continue increasing.

42. As of August 24, 2026, after crediting Defendants for all payments actually received by Mr. Valvardi, the balance of earned but unpaid salary was $191,105.50.

43. Mr. Valvardi has also incurred $2,246.14 in reimbursable business expenses on Defendants' behalf in connection with the performance of his CFO duties. Mr. Valvardi submitted those expenses to Defendants for reimbursement, Defendants approved the expenses, and Defendants nevertheless failed to reimburse him.

44. Defendants never advised Mr. Valvardi that his compensation was being withheld because of deficient performance, a dispute concerning the terms of his Offer Letter, or a disagreement concerning whether he had earned the compensation.

45. To the contrary, Adam Wolman and Alexa Wolman repeatedly acknowledged that Defendants owed Mr. Valvardi the unpaid compensation.

46. At no time during these communications did Adam Wolman or Alexa Wolman contend that Mr. Valvardi had not earned the compensation reflected in the outstanding balance.

47. As Defendants' CFO, Mr. Valvardi had direct knowledge of Defendants' cash position, funding requirements, and ability to satisfy payroll obligations.

48. Defendants' failure to pay Mr. Valvardi did not result from the complete absence of funds. During the same period in which Defendants allowed Mr. Valvardi's unpaid wages to accumulate, Defendants continued making payments to other employees, vendors, and/or obligations selected by the Individual Defendants.

49. The Individual Defendants therefore intentionally made and/or participated in decisions to use available corporate funds for obligations other than Mr. Valvardi's earned compensation.

50. Defendants' failure to pay Mr. Valvardi was not an isolated payroll error. Defendants similarly failed for extended periods to pay Ryan Fingerhut ("Mr. Fingerhut"),

Defendants' former Executive Vice President of Regulatory Compliance, compensation he had earned.

51. The Individual Defendants were aware that both Mr. Valvardi and Mr. Fingerhut were continuing to perform executive-level services while substantial compensation remained unpaid.

52. Defendants' continuing failure to pay Mr. Fingerhut ultimately caused him to resign from his employment.

53. After Mr. Valvardi complained about unpaid wages and misclassification, Defendants continued to withhold his earned wages, systematically removed him from executive team meetings, isolated him, prevented him from performing his job, stripped him of core job functions, directed other employees not to communicate with him, and marginalized his role as CFO.

54. Despite repeated attempts by Mr. Valvardi to resolve his unpaid wages and the misclassification issues, Defendants continued to marginalize his role to the point where Mr. Valvardi was constructively discharged from employment as of August 24, 2026

**COUNT I**
**Violations of the Pennsylvania Wage Payment and Collection Law ("PA WPCL")**
**(Failure to pay wages)**
**Against All Defendants**

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Defendants were Mr. Valvardi's employers as defined by the PA WPCL, controlled payroll, had authority over financial decisions, and personally directed the cessation of payments of Mr. Valvardi's earned wages.

57. Pursuant to the PA WPCL, wages include “all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation.” Wages also include “fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer.”

58. Defendants improperly classified Mr. Valvardi as an independent contractor despite treating him as an employee and executive officer.

59. Pursuant to Mr. Valvardi’s Offer Letter, Defendants promised to pay him wages in exchange for work he performed.

60. Mr. Valvardi performed work for Defendants under the promise of wages to be paid in the amount of $180,000/year.

61. Defendants have intentionally failed to pay Mr. Valvardi his wages earned in the amount of $191,105.50.

62. Defendants have not asserted any good-faith dispute concerning Mr. Valvardi's entitlement to the compensation provided in the Offer Letter.

63. To the contrary, Defendants have repeatedly acknowledged that Plaintiff is owed the unpaid compensation and have attributed their failure to pay solely to the Company's lack of available funds. Defendants' stated inability or unwillingness to fund payroll does not alter Mr. Valvardi's contractual entitlement to earned wages.

64. Plaintiff is entitled to unpaid wages, liquidated damages, costs, legal fees, and other penalties, as Defendants violated the PA WPCL.

**COUNT II**
**<u>Violations of the FLSA</u>**
**(Retaliation)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. At all relevant times, Plaintiff was an "employee" and Defendants were an "employer" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

67. Plaintiff engaged in protected activity under Section 15(a)(3) of the FLSA by complaining to Defendants regarding misclassification of employees as independent contractors, non-payment of wages, and Defendants' failure to comply with federal wage-and-hour laws.

68. Following this protected activity, Defendants subjected Plaintiff to retaliatory harassment and adverse changes in conditions, including continuing to withhold his earned wages, systematically removing him from executive team meetings, isolating him, preventing him from performing his job, stripping him of core job functions, directing other employees not to communicate with him, and marginalizing his role as CFO.

69. These retaliatory actions were severe, continuous, and calculated by Defendants to make Plaintiff's working conditions so intolerable that any reasonable person in Plaintiff's position would feel compelled to resign.

70. Plaintiff was forced to resign on August 24, 2026, as a direct and proximate result of Defendants' unlawful, retaliatory, and intolerable work environment.

71. As a direct result of Defendants' violation of the FLSA, Plaintiff has suffered loss of income, benefits, emotional distress, and other compensatory damages.

## COUNT III
## Breach of Contract
## (Failure to pay wages)

72. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73. This count is pled in the alternative only if Mr. Valvardi is found to be an Independent Contractor.

74. Defendants promised in Mr. Valvardi's Offer Letter to pay him $180,000/year for work performed as Defendants' CFO.

75. Mr. Valvardi fully fulfilled all material obligations required of him by Defendants.

76. Defendants have intentionally failed to pay Mr. Valvardi his wages earned in the amount of $191,105.50.

77. Mr. Valvardi has therefore been harmed by Defendants' breach of their agreement to pay him earned wages.

78. Defendants have materially breached their agreement to pay Mr. Valvardi for his work.

**COUNT IV**
**<u>Pennsylvania Common Law</u>**
**(Detrimental Reliance/Unjust Enrichment)**

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80. This count is pled in the alternative only if the parties' agreement is found to be unenforceable.

81. Defendants made promises to use Plaintiff's services and pay him in accordance with his Offer Letter (outlining the pay and job duties which Plaintiff would perform).

82. Plaintiff relied, to his detriment, on Defendants' promises by accepting employment with Defendants and foregoing other employment and business opportunities.

83. Defendants were unjustly enriched by, in essence, stealing labor from Mr. Valvardi, as well as his expertise and knowledge. Defendants' refusal to pay Plaintiff the compensation promised constitutes an inequity that should be remedied.

84. Defendants should be estopped from failing to fulfill their promises, assurances, and compensatory obligations to Plaintiff.

85. Injustice for Defendants' aforesaid actions can be avoided only by enforcing Defendants' promises.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful and illegal actions or omissions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, incentives, commissions, and other monetary remedies;

B. Defendants are to be subjected to any and all penalties allowed by state law;

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions as permitted by applicable law;

D. Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including but not limited to pre and post judgment interest, costs, and attorneys' fees;

F. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

G. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable law; and

H. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: August 24, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Philip Valvardi | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Compiler Holdings, Inc. d/b/a Greene Street Cannabis, Co., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 8/24/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# DESIGNATION FORM

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

VALVARDI, PHILIP

**(b)** County of Residence of First Listed Plaintiff: Montgomery

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

COMPILER HOLDINGS, INC. D/B/A GREENE STREET CANNABIS, CO., ET AL.

County of Residence of First Listed Defendant: Miami-Dade

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [X] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***: FLSA (29USC201)

Brief description of cause: Violations of the FLSA, PA WPCL and PA Common Law.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE 8/24/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____